{¶ 25} I concur in the majority's analysis and disposition of appellants' first assignment of error. However, I respectfully dissent from the majority's disposition of appellants' second assignment of error. I find that the trial court did not err when it charged the jury on lack of informed consent because the evidence at trial was legally sufficient for the lack of informed consent charge.
 {¶ 26} The majority resolves that appellees failed to satisfy the second element of Nickell v. Gonzalez (1985),17 Ohio St.3d 136. I disagree. The majority concludes that the trial court erred when it charged the jury on the issue of lack of informed consent because "none of the experts testified that the risks of gentamicin were those that should have been disclosed and that, by failing to inform Mrs. Badger of the risks of gentamicin, Dr. McGregor did not conform to the standard of care of a reasonably prudent physician in the same or similar circumstances as required by Nickell." (See ¶ 22.) Contrary to the majority, I do not find the absence of this testimony to be fatal to appellees' lack of informed consent claim.
 {¶ 27} After much deliberation, including my consideration of the informed consent test outlined in Nickell, I resolve that the Ohio appellate cases, including at least one from this court, finding that, in order for a plaintiff to establish the tort of lack of informed consent, the plaintiff must present expert testimony stating that the physician deviated from the accepted standard of care, have misstated and misapplied the law in Ohio. Thus, to the extent that prior decisions of this court have held that in order for a plaintiff to establish the tort of lack of informed consent, an expert must state that the defendant physician deviated from the accepted standard of care, I would reluctantly state that these decisions should be overruled.
 {¶ 28} The Supreme Court of Ohio in Nickell adopted a "materiality test" when it outlined the requirements for the tort of lack of informed consent. As stated in Nickell, at 139, the issue of whether a physician must disclose a risk requires a determination of whether the potential danger, or risk, is "sufficiently material to require disclosure." The Supreme Court further noted that the jury was properly instructed that "a risk is material when a reasonable person, in what the physician knows or should know to be the patient's condition, would be likely to attach significance to the risk or [cluster of] risks in deciding whether or not to forego the proposed treatment." Id. Whether a risk is "material," such as to require disclosure, is determined by a reasonable patient standard. See Bedel v. Univ. ofCincinnati Hosp. (1995), 107 Ohio App.3d 420, at 428, citingNickell.
 {¶ 29} Pursuant to the first prong of the Nickell test, appellees needed to establish that Dr. McGregor failed to disclose to Mrs. Badger and discuss with her "the material
risks and dangers inherently and potentially involved with respect to" (emphasis added) the use of gentamicin. Id. at 139. Under the second prong of the Nickell test, appellees had the burden of showing that the "unrevealed risks and dangers which should have been disclosed by the physician," id. at 140, actually materialize and proximately caused her injury. Under my interpretation of Nickell, the phrase "the unrevealed risks and dangers which should have been disclosed" could be alternatively stated as "the unrevealed risks and dangers thatare material." (Emphasis added.)
 {¶ 30} Clearly, in order to establish the tort of lack of informed consent under the Nickell test, a plaintiff must establish the materiality of risks or dangers. The "risks and dangers which should have been disclosed" is determined by whether the "potential danger, albeit improbably remote, is sufficiently material to require disclosure." See id. at 139. Moreover, "[t]o this end the reasonable patient standard is utilized." Id. In other words, under this test, whether a risk is material depends on whether a reasonable patient would attach significance to a risk, not whether a reasonable physician would attach significance to a risk. See id. Thus, under the Nickell
test, the reasonable patient standard is used to determine materiality, and materiality determines what should be disclosed by the physician. Therefore, under the materiality test in an informed consent case, the applicable standard of care for a physician may be established without expert testimony relating to the recognized standards of the medical community. I conclude that in an informed consent case, a jury may be competent to determine if a physician fell below the applicable standard of care even without expert testimony stating that the physician fell below the accepted standard of care.
 {¶ 31} Therefore, appellees did not have the burden of presenting expert testimony stating what a reasonable medical practitioner of the same discipline, practicing in the same or similar circumstances, would have disclosed to Mrs. Badger about the risks associated with gentamicin, and that Dr. McGregor departed from that standard. This finding is consistent with the reasoning behind the tort of lack of informed consent,[2]
and is in accord with the Supreme Court of Ohio's decision inNickell.
 {¶ 32} Notwithstanding the above discussion, I recognize that expert testimony remained critical to appellees' lack of informed consent claim. In an informed consent case, the trier of fact must determine whether particular risks would be material to a reasonable patient and whether the reasonable patient would have decided against the treatment if these risks had been disclosed.[3] These determinations necessarily require certain information, which is beyond the knowledge of the lay person, to be presented to the trier of fact by expert testimony. Namely, in order for the trier of fact to competently make these determinations, it must have information as to the risks inherent in a particular treatment, the frequency and severity of potential risks, as well as the nature, availability, and risks of any viable alternatives. See Sard, at 447-448. ("We are not to be understood as holding, however, that expert medical testimony can be dispensed with entirely in cases of informed consent. Such expert testimony would be required to establish the nature of the risks inherent in a particular treatment, the probabilities of therapeutic success, the frequency of the occurrence of particular risks, the nature of available alternatives to treatment[.]")
 {¶ 33} As noted by the majority, appellees, through expert testimony, presented evidence as to the risks of gentamicin, the probability and severity of potential risks, as well as the nature, availability, and risks of any alternatives.
 {¶ 34} Based on my review of the record and my interpretation of Nickell, supra, I find that the evidence was legally sufficient to establish the tort of lack of informed consent. I conclude that the trial court did not err in charging the jury on the issue of informed consent. Therefore, I would overrule appellants' two assignments of error and affirm the judgment of the trial court.
[2] As Maryland's highest tribunal has stated: "If the foundation of the doctrine of informed consent is the patient's right to know and his right to physical self-determination, then logic requires that the standard of care applicable to physicians in disclosure cases not be drawn from medical practice and custom." Sard v. Hardy (1977), 281 Md. 432, 447. Moreover, this court in Turner v. Children's Hospital, Inc. (1991),76 Ohio App.3d 541, 554, observed that "[t]he law of informed consent is predicated on notions of patient sovereignty and serves to safeguard the patient's right of choice."
[3] I note that Mrs. Badger testified that had she known the risks associated with gentamicin, she would not have taken the medication. (Tr. 820.) This testimony, while relevant, is not determinative on the issue of whether a reasonable person, in the position of the patient, would have decided against the treatment. See Nickell, at 139, citing Sard, at 450.